786 A.2d 154 (2001)
346 N.J. Super. 6
Linnea ZEPF, Plaintiff-Respondent/Cross-Appellant,
v.
HILTON HOTEL & CASINO, Defendant-Appellant/Cross-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued November 5, 2001.
Decided December 20, 2001.
*156 James M. Hirschhorn, Newark, argued the cause for respondent (Sills Cummis Radin Tischman Epstein & Gross, attorneys; Mr. Hirschhorn, of counsel and on the brief).
Robert A. Porter, Cherry Hill, argued the cause for appellant (Friedman, Bafundo, Porter & Borbi, attorneys; Mr. Porter, on the brief).
Before Judges HAVEY, BRAITHWAITE and COBURN.
*155 The opinion of the court was delivered by BRAITHWAITE, J.A.D.
Defendant Hilton Hotel & Casino appeals from a judgment entered on a molded jury verdict awarding plaintiff Linnea Zepf, defendant's employee, $150,000 in damages for injuries she suffered when she was assaulted by a robber on the sidewalk adjacent to defendant's property as she left work to go home in the early morning hours of March 10, 1997. On appeal, defendant contends that it owed no duty to provide surveillance and security patrols on a public sidewalk it does not own or control and that if it owed such a duty, it satisfied that duty by providing a shuttle bus to a secure parking lot. Plaintiff cross-appeals from the trial judge's submission of the issue of plaintiff's comparative negligence to the jury. We reject the contentions raised on both the appeal and the cross-appeal and affirm.
The facts the jury could have found from the evidence may be summarized as follows. Plaintiff, a casino dealer, was a resident of Ventnor, working for defendant on March 10, 1997. Plaintiff left work at approximately 1:30 a.m. following the end of her normal shift. Defendant's building, actually housing the casino, is located between the boardwalk and Pacific Avenue and Providence and Boston Avenues in Atlantic City.
Attached to the casino building is a skywalk across Pacific Avenue that links the casino with another building known as the Dream Deck, a multi-story customer parking garage, owned by defendant. On the upper levels of the Dream Deck is customer parking and on the ground floor is a transportation center for casino buses that bring patrons to the casino and some casino executive offices. In addition, the *157 Dream Deck is the location for a shuttle bus that transports employees to a remote parking lot where some employees choose to park their cars while working. The remote employee lot is a guarded and fenced lot that employees are taken to and from by defendant's shuttle bus, which leaves from the Dream Deck every fifteen minutes. The Dream Deck also has an employee entrance and exit that can take an employee to Providence Avenue, the street where plaintiff was assaulted.
Located right next to the Dream Deck on Providence Avenue is the Holiday parking lot, a private lot, not connected to defendant's business. Plaintiff parked her car in the Holiday lot, although she was aware of the remote employee lot and the shuttle service. In fact, plaintiff never used the remote lot and shuttle service because it added forty minutes to her trip to and from work. Further, the remote parking area was often flooded, as was the street on which it was located. In addition, "street people" hung around the area of the Dream Deck where the shuttle departed. For all these reasons, plaintiff declined to use the shuttle service and remote employee parking lot.
Some employees used the employee lot, while others used the Holiday lot. A defense witness conceded that defendant's employees were not required to use the shuttle bus and employee lot. Moreover, plaintiff was never told that she had to use that lot and the shuttle bus. Defendant never directed or recommended that plaintiff use the Holiday lot. However, she was never told by defendant of any risks of using the sidewalk to get to the Holiday lot or that using that lot was not safe. She believed that walking along Providence Avenue from the employee exit in the Dream Deck to the Holiday lot, a distance of 153 feet, was safe.
Prior to the attack, plaintiff left the employee's exit in the Dream Deck and proceeded toward the Holiday lot. As she crossed the driveway from which casino buses leave the Dream Deck, she heard footsteps behind her. She then felt a tug on her handbag, but the assailant was unable to pry the bag away from plaintiff. He dragged her down the street, knocked her to the ground and took her bag. When plaintiff struck the ground, she suffered a fractured hip. Plaintiff's assault occurred on the sidewalk adjacent to the casino executive offices located in the Dream Deck. Two good Samaritans saw the incident, caught the assailant and retrieved plaintiff's bag. The police then arrived and plaintiff was taken to Atlantic City Medical Center. She had to be transferred to another hospital where surgery was performed on her hip.
Plaintiff was in the hospital for five days and spent four weeks at a rehabilitation hospital. She continued with outpatient rehabilitation therapy after leaving the hospital. She suffers from severe pain and depression, and takes several medications as a result. Plaintiff was out of work for approximately four weeks. The parties stipulated that she lost approximately $8,000 in income and had medical expenses of $25,807.
Defendant's security manual provided that the security department was to "periodically check [the property's] perimeters." Defendant's security department patrolled Boston Avenue between the Dream Deck and a surface parking lot it operated on the other side of the street from the Dream Deck. That area was also under closed circuit television ("CCTV") surveillance. That security was designed to protect defendant's patrons and its property. In addition, security personnel routinely patrolled the Dream Deck and bus terminal, as well as two surface parking *158 lots it operated. These areas were also covered by CCTV surveillance in order to protect patrons, employees and property. CCTV also covered the Boardwalk at Providence Avenue, where a loading dock to defendant's building was located.
Although there was CCTV on the Providence Avenue side of the Dream Deck, it was focused on the Dream Deck, rather than on the street. In fact, there was no security at all, in the form of roving patrols or CCTV coverage, on Providence Avenue adjacent to the casino and the Dream Deck. Similarly, there was no security on the Boardwalk in front of the casino, except for the loading dock, as noted above. Defendant's witness testified that no security was in these areas because it believed public sidewalks were not its responsibility; rather, the Atlantic City Police Department was responsible for security on public streets. As a result, defendant did not obtain any crime statistics regarding the level or types of criminal activity which occurred around its property. In sum, defendant provided security only in the hotel casino, Dream Deck, and in its outside parking areas.
Ira Somerson testified for plaintiff as an expert in security and security management. He evaluated the security in place at the Hilton in March 1997. He first concluded that there was a foreseeable risk of crime being committed on people on the public streets in the area adjacent to defendant's property, given the nature of the casino business, i.e., a lot of visitors with large amounts of cash, and the history of criminal activity in the area surrounding defendant's property. Somerson obtained statistics from the Atlantic City Police Department on crime in the vicinity of defendant's property. Given the absence of any security along Providence Avenue between the Boardwalk and Atlantic Avenue, he opined that plaintiff was more at risk walking to the Holiday lot than in other areas around defendant's property.
Moreover, Somerson noted that defendant failed to comply with its own security manual, in that all of the property's perimeters were not routinely checked. Further, the availability of the shuttle bus did not alter his analysis, because it was not mandatory that all employees use it.
In short, Somerson opined that defendant owed a duty to provide security in all areas adjacent to its property, including Providence Avenue from the Boardwalk to the Holiday lot. The fact that plaintiff was an employee was irrelevant. Somerson testified that defendant owed the same duty to an Atlantic City visitor walking along Providence Avenue to the beach. Therefore, according to Somerson, defendant should have provided at least one individual to patrol Providence Avenue and the remaining perimeter of the building every thirty minutes.
In addition to the above, there was sufficient evidence for the jury to infer that defendant was aware or should have been aware that some of its employees did not use the shuttle bus and remote employee parking lot, but instead used the Holiday lot, located 153 feet away from the employee exit and entrance in the Dream Deck. There was plaintiff's testimony that the people who parked at Holiday were employees; a video tape of the route of the shuttle bus showing very few employees using the service; and defendant's employee, the entertainment supervisor in charge of audio visual, who took the video, did not use defendant's remote parking lot. Further, given that employees were not required to use the remote parking lot, it is reasonable to infer that employees would use the Holiday lot located so close to defendant's property. Moreover, there *159 was testimony that the shuttle service to the remote parking lot was not provided for security or safety reasons, but to alleviate traffic congestion in the vicinity of the casino.

I
Prior to trial, defendant moved for summary judgment contending that it did not owe a duty to provide security on Providence Avenue. Its motion was denied.
After discussing the relevant facts and reviewing related case law, the motion judge applied a "totality of the circumstances test" and concluded that, as a matter of law, defendant owed a duty to provide security for its employees on Providence Avenue. Because many casino patrons are visitors to the city and are carrying cash, the likelihood of criminal activity around the casino was fairly high. In addition, defendant's security manual required it to provide security along its perimeters. Finally, defendant received an economic benefit from individuals using the sidewalk to get to its casino. The judge held that it was for the jury to decide whether defendant breached the duty owed to plaintiff. We conclude that defendant's motion for summary judgment was properly denied and that the issue was properly submitted to the jury.
At trial, the judge instructed the jury that the owner of a hotel/casino owed a duty to its employees and patrons to provide a reasonably safe place to enter and exit the building. Defendant had to take reasonable and prudent steps to protect its customers and employees from injury inflicted by individuals that defendant could reasonably have foreseen might be present in the immediate area. Whether criminal activity was reasonably foreseeable was determined by considering several factors, including prior criminal acts in and around the property, the size of the property and the absence of sufficient security, the type of business operated by defendant, and the fact that security guards can act as a deterrent to crime. Thus, the jury had to consider the totality of the circumstances to decide if the injuries plaintiff suffered were reasonably foreseeable. By way of interrogatories, the jury was asked if the assault was foreseeable and whether defendant was negligent for failing to provide adequate security on Providence Avenue.
We now review the cases that lead us to affirm on the appeal. Our Supreme Court first held in 1981 that an abutting commercial landowner may be liable for injuries to a pedestrian caused by a dilapidated sidewalk, if the owner failed to maintain the sidewalk in good condition. Stewart v. 104 Wallace Street, Inc., 87 N.J. 146, 149-57, 432 A.2d 881 (1981). Following that decision, the Court was confronted with a suit by an individual who, after shopping in a supermarket, was assaulted in the store's parking lot. Butler v. Acme Mkts., Inc., 89 N.J. 270, 274, 445 A.2d 1141 (1982). The Court held that a proprietor owes a duty of reasonable care to an invitee for business purposes to provide a reasonably safe place to do that which is within the invitation. Id. at 275, 445 A.2d 1141. If a reasonable, prudent individual could foresee danger from another's actions, the fact that those acts were beyond the proprietor's control did not preclude liability. Thus, the foreseeability of the criminal contact in the area was a crucial issue. Id. at 276, 445 A.2d 1141. Because the foreseeability of criminal conduct in the area in question was foreseeable, the Supreme Court affirmed our decision which reinstated a jury verdict in the plaintiff's favor. Id. at 274, 445 A.2d 1141.
Subsequently, we have reaffirmed the principle that the proprietor of a business to which the public is invited owes a duty of reasonable care to those who enter *160 the premises to provide a reasonably safe place to do that which is in the scope of the invitation. Mulraney v. Auletto's Catering, 293 N.J.Super. 315, 319, 680 A.2d 793 (App.Div.), certif. denied, 147 N.J. 263, 686 A.2d 764 (1996). In Mulraney, a patron of the defendant catering business visited the business. The parking lot was filled, so the patron parked across a busy highway from the business. After attending a bridal affair at the defendant's business, the patron was hit by a car and killed as she crossed the highway. Her husband and daughter sued the defendant. 293 N.J.Super. at 317-18, 680 A.2d 793. The trial court granted summary judgment to the defendant, holding that the business had no duty to provide safe passage across the highway. Id. at 319, 680 A.2d 793.
In reversing, id. at 324, 680 A.2d 793, we noted that, although a landowner's duty generally applies to those who come onto the land, it can be extended beyond the property. Id. at 319, 680 A.2d 793. Thus, the defendant had a duty to provide a reasonably safe passage for its patrons crossing a highway to reach the business. Id. at 320-21, 680 A.2d 793. We reached this conclusion based upon the following factors: the special relationship between the business invitee and the business; the fact that there was a substantial risk that a patron crossing the highway at night could be hit by a passing car; the fact that steps could be taken to ameliorate that danger; and the fairness of imposing that duty of care on a business which knows its patrons used the parking lot across the highway. Id. at 321-22, 680 A.2d 793.
In Kuzmicz v. Ivy Hill Park Apts., 147 N.J. 510, 512, 688 A.2d 1018 (1997), the plaintiff was a tenant in the defendant's apartment building. He was assaulted in a city-owned vacant lot between the apartment building and a grocery store from which he was returning. The landlord had built an eight-foot fence to keep individuals from using the route the plaintiff used, and had repaired it several times; nevertheless, a hole was cut into the fence, so that the plaintiff was able to use the route in question. Ibid.
Our Supreme Court, in considering the duty owed by a landlord for injuries occurring on its property, held that the key issue is whether, in light of the relationship between the parties and under all of the attendant circumstances, the imposition on the landowner of a duty to protect the injured party is fair and just. Notably, the analysis was the same whether the injury occurred on or off the premises. Id. at 515, 688 A.2d 1018. "In both contexts, however, the analysis is fact-sensitive." Ibid. Although the foreseeability of danger is an important factor in this respect, it is not dispositive. Ibid. Rather, relevant to the issue of fairness is the nature of the risk, the relationship of the parties, the opportunity to exercise care, and the effect on the public of the imposition of the duty. Ibid.
The Court then noted that there was no precedent for imposing liability on an apartment building owner for injuries on property it did not own or control. Id. at 517, 519-20, 688 A.2d 1018. Moreover, a landowner is generally not liable for off-premises injuries just because they are foreseeable. Thus, an abutting property owner is generally not liable for injuries occurring on an adjacent public way. Id. at 518, 688 A.2d 1018.
The Court acknowledged our holding in Mulraney, supra, and noted that the defendant there had received an economic benefit from the patron's use of the lot to get to defendant's business. In Kuzmicz, on the other hand, the apartment building owner received no such benefit.
In Clohesy v. Food Circus Supermarkets, Inc., 149 N.J. 496, 499-500, 694 A.2d *161 1017 (1997), the decedent was abducted from the defendant's shopping center parking lot and murdered. Although there had been substantial criminal activity in and around the lot, id. at 503, 694 A.2d 1017, there had been no prior abductions there. Id. at 500, 694 A.2d 1017. The Court reiterated prior holdings that the foreseeability of harm to the injured party is relevant to the legal issue of whether a duty existed, but not dispositive of the issue. Rather, determining whether a duty existed is an issue of fairness and policy "that implicates many factors." Id. at 502, 694 A.2d 1017 (quoting Carvalho v. Toll Bros. & Developers, 143 N.J. 565, 572, 675 A.2d 209 (1996)). Thus, a business owner had a duty to protect its patrons from foreseeable criminal acts which occurred on its property; that duty included the duty to provide security for the business's parking lot. Id. at 504-05, 517, 694 A.2d 1017. The "totality of the circumstances" has to be viewed to determine if criminal conduct is likely to occur.
Notably, the Court held that a finding by the jury that security guards or surveillance cameras were required to meet the defendant's duty to its customers was not an "improper delegation of the governmental obligation to provide police protection." Id. at 519, 694 A.2d 1017. It reached that conclusion because a security guard would merely report suspicious criminal activity to help avert crime; he or she would not have the authority to investigate crime, or arrest and prosecute suspects. Ibid. Thus, the defendant owed a duty to the decedent to provide some measure of security in the parking lot. The Court did observe, however, that imposing a duty on small business owners would have to be determined on a case-by-case basis, applying the totality of the circumstances standard. Id. at 520, 694 A.2d 1017.
In Schwarz v. Port Auth. Transit Corp., 305 N.J.Super. 581, 585-86, 702 A.2d 1351 (App.Div.1997), certif. denied, 153 N.J. 214, 708 A.2d 65 (1998), decided months after Clohesy, a patron of the defendant's train system was assaulted while walking to the defendant's terminal, on property owned by the City of Philadelphia. The concourse upon which the plaintiff was walking when injured was used by pedestrians in the same manner as a public street. Id. at 584, 586, 702 A.2d 1351.
In reviewing the grant of summary judgment to the defendant, we held that the scope of the duty owed by the defendant was a legal question for the court to decide, based on the totality of the circumstances. Id. at 589-90, 702 A.2d 1351. There, the concourse was used in the same manner as a public street, and was patrolled by city police, not the defendant's employees. Under these circumstances, "defendant's duty of care for the safety of its patrons may not be extended into the area patrolled by the [Philadelphia] police." Id. at 590, 702 A.2d 1351. Significantly, we concluded that, pursuant to its lease with Philadelphia, the defendant had no authority to undertake security to protect its patrons. Ibid. Under those circumstances, we observed that it would be inappropriate to impose a duty on the defendant. Ibid.
In Roe v. New Jersey Transit Rail Operations, 317 N.J.Super. 72, 74-75, 721 A.2d 302 (App.Div.1998), certif. denied, 160 N.J. 89, 733 A.2d 494 (1999), the plaintiff was walking to a public swimming pool from home and the route took her past the defendant's subway station. A fence separated the station from a park in which the pool was located, but a gate in the fence permitted the plaintiff and others to commonly take a shortcut to the pool. The gate was broken, and was ultimately permanently bolted open by the defendant. *162 After using the gate to take the shortcut to the park, the plaintiff was attacked. The assault did not occur on the defendant's property. Id. at 75-76, 721 A.2d 302. The trial court, relying on Kuzmicz, held that the defendant was not liable for plaintiff's offsite injuries. Id. at 76-77, 721 A.2d 302.
On appeal we reversed, holding that a jury could reasonably conclude that the bolted-open gate could be a dangerous condition which caused the plaintiff's injuries, and that the dangerous condition created a reasonably foreseeable risk of the type of injury that occurred. Id. at 78, 721 A.2d 302. Thus, if the defendant created the dangerous condition on its property and enhanced the risk of assault to persons crossing through the property, the defendant could be held liable, even though the assault occurred off premises. Id. at 80, 721 A.2d 302. We also distinguished Kuzmicz, noting that the defendant there had provided a safe exit to a public street and had taken steps to prevent the use of the shortcut by repairing the fence. Id. at 81, 721 A.2d 302. Further, we observed that the defendant "potentially derived an incidental benefit by providing or encouraging additional access to the station." Ibid.
We are satisfied that defendant's tort liability here does not depend on the "common law methodology of premises liability." Mulraney, supra, 293 N.J.Super. at 321, 680 A.2d 793. "Whether a person owes a duty of reasonable care toward another turns on whether the imposition of such a duty satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy." Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439, 625 A.2d 1110 (1993). As noted, the policy considerations involve the weighing of "the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution." Ibid.
Here, balancing and weighing these factors, defendant owed a duty to plaintiff, its employee. Clearly, defendant obtained an economic benefit from plaintiff's work activities in defendant's casino. Defendant provided security for the area around its facility for its patrons and property, with the exception of Providence Avenue where plaintiff was assaulted, right outside of defendant's executive offices. We discern no difference here between plaintiff and defendant's patrons.[1] A defense witness testified that defendant provided security to protect its patrons and property. We fail to perceive how defendant would assert under these circumstances no duty to provide security on Providence Avenue when its property borders that street and its patrons could clearly traverse that street in entering and exiting its property. The risk of an incident suffered by plaintiff was significant given the nature of defendant's business. A risk certainly recognized by defendant because it provided security in virtually all other locations and its security manual provided that security was to periodically check the perimeters of the facility. Plaintiff was attacked on defendant's perimeter. Clearly, defendant had the ability to provide security on Providence Avenue as it did in the other locations. "[T]he relationship between a business enterprise and persons invited to its premises to further its commercial interest[, employees,] has *163 traditionally required the exercise of `a higher degree of care' than is owed to other persons." Mulraney, supra, 293 N.J.Super. at 321, 680 A.2d 793 (quoting Hopkins, supra, 132 N.J. at 433, 625 A.2d 1110.) We are satisfied that it is fair and just to impose a duty of care on defendant under the circumstances here.
Defendant's reliance on Kuzmicz, supra, and Schwarz, supra, is misplaced. Unlike here, there was no economic benefit to the defendant in Kuzmicz. Schwarz is not controlling because, there, the defendant was not authorized by its lease with the City of Philadelphia to provide security to protect its patrons in the area where the plaintiff was assaulted.

II
Defendant next asserts that even if it owed a duty to plaintiff, it satisfied that duty as a matter of law by providing a free employee shuttle bus to its secure employee parking lot. We disagree.
Defendant raised this issue at the close of plaintiff's case, and again at the close of all the evidence. The judge denied the initial motion. He said:
this is a 4:37 motion, so all inferences at this posture are given to the plaintiff. There is nothing in this record to indicate that the plaintiff was prohibited from parking her car where she parked her car, and it appears from the record that other people that work there park their car there as well.
So the issue of duty to supervise in or around the area in theof the casino where employees or patrons would walk and/or provide security in that immediate area is for the jury to determine if the duty that I have found to exist was breached under the totality of the circumstances.
I think that's basically what you're saying that Butler says and that's what I wrote, and that's why I believe the motion at this posture should be denied because all reasonable inferences are given to the nonmovant.
There's nothing in this record that, for instance, plaintiff was parking in a place that was absolutely prohibited; that she was parking in a place where evidently other employees parked. Therefore, [she] inferred from that the casino knew that and thatthen it goes to the issue of whether or not the duty that the Court has found to provide supervision or security in the immediate area in and around the casino where patrons, third parties and/or employees would walk, whether or not there was adequate security under the totality of the circumstances test that the recent cases have enumerated, whether or not that duty has been breached is one for the jury; and therefore, [defendant's] application would be denied.
The judge rejected defendant's motion renewed at the close of all the evidence, for the same reasons.
We agree with the trial judge. The evidence at trial disclosed that the use of the shuttle bus, while available for employees to get to the employee parking lot, was not mandatory. Moreover, a reasonable inference could be drawn that defendant was aware or should have been aware that some of its employees did not use the shuttle bus and employee lot, but instead used the Holiday lot. Further, defendant's security department shift manager testified that defendant's security manual did not mention the shuttle bus. In fact, the shuttle was not part of Hilton's security efforts. Finally, plaintiff's security expert testified that because the shuttle was not mandatory, its provision did not meet Hilton's duty to protect employees from the foreseeable risk of crime which existed *164 for employees walking on the streets adjacent to defendant's property. Given this testimony, the trial judge properly denied defendant's motion.

III
In plaintiff's cross-appeal, she contends that the trial judge erred in submitting the issue of comparative negligence to the jury. We reject plaintiff's contention.
A plaintiff is deemed contributorily negligent when his or her actions constitute a failure to care for his or her safety as a prudent person in similar circumstances would. In a contributory negligence situation, "the issue is whether the plaintiff was moving about in the world in a way that posed an unreasonable risk of physical injury to herself." Tose v. Greate Bay Hotel & Casino, Inc., 819 F.Supp. 1312, 1315 (D.N.J.1993). Thus, New Jersey courts "have undoubtedly imposed a duty on individuals not to place themselves in positions of unreasonable physical danger." Ibid.[2]Accord, Keller v. Frank Kull, Inc., 165 N.J.Super. 258, 263, 398 A.2d 106 (App.Div.1978) ("contributory negligence consists of the failure of a plaintiff to use such care for his own safety as an ordinarily prudent person in similar circumstances would use"). Thus, a plaintiff has a duty to avoid an impediment on a sidewalk, Milstrey v. City of Hackensack, 6 N.J. 400, 413-14, 79 A.2d 37 (1951), or an open hole in a trench. Hendrikson v. Koppers Co., Inc., 11 N.J. 600, 608, 95 A.2d 710 (1953).
Unless public policy requires otherwise, if a plaintiff's action contributes to an injury negligently caused by a defendant, "the plaintiff's comparative fault should be submitted to the factfinder for determination." Del Tufo v. Tp. of Old Bridge, 147 N.J. 90, 111, 685 A.2d 1267 (1996); Eden v. Conrail, 87 N.J. 467, 473, 435 A.2d 556 (1981) (in action by commuter against railroad for injuries sustained when he fell onto tracks, issue of comparative negligence, due to his awareness that he had epilepsy and the resultant likelihood he might become unconscious and fall onto tracks, should be submitted to jury). In apportioning liability, then, "the factfinder should compare the fault of all parties whose negligence was a proximate cause of the plaintiff's injuries." Campione v. Soden, 150 N.J. 163, 177, 695 A.2d 1364 (1997). However, the plaintiff's conduct should be so compared "only when it is wrongful and causally contributed to the injuries sustained." Bencivenga v. J.J.A.M.M., Inc., 258 N.J.Super. 399, 410, 609 A.2d 1299 (App.Div.), certif. denied, 130 N.J. 598, 617 A.2d 1220 (1992).
Here, the trial judge said the following with respect to the reason he charged comparative negligence:
that under basic comparative negligence standards, with the charge being that negligence is the failure to act as a reasonable person would have acted under similar circumstances, or the acting in a way that a reasonable person would not have acted and because of the arguments that have been made throughout this case, that there was the availability of a parking lot for employees and there was a shuttle bus available with security in that lot, that I think it presents a jury question as to whether or not the actions of the plaintiff in not availing herself of that availability under the totality of the facts of this case would present a situation where a jury could find that she was comparatively negligent. It doesn't mean they have to find it.
And then, of course, the second corollary to that, obviously, is proximate cause, *165 which the jury veryI guess, easily could find that she may have been negligent, but that that negligence was not a proximate cause of the incident [that] took place. That would not be something that would be off the wall or inconsistent either. For those reasons, I indicated to the counsel in chambers that I would charge that.
We agree with the trial judge. The facts here, particularly the availability of the shuttle bus and the time plaintiff left her employment, created a jury question with respect to whether plaintiff's decision not to use the shuttle bus to the parking lot provided by defendant constituted negligence. Further, the fact that the shuttle service and remote lot were not created for security purposes, does not alter our conclusion that the issue was properly submitted to the jury. It was a fact along with others that the jury could consider in determining whether plaintiff's decision not to use the shuttle service constituted a failure on her part to care for her safety as a prudent person in similar circumstances would.
It was not plaintiff's decision to walk along a public street that created the issue of her potential negligence, as she contends. This is not a case where plaintiff is excused "from exercising reasonable self-care" because her "duty is itself encompassed by the duty of care owed by the defendant to the plaintiff." Cowan v. Doering, 111 N.J. 451, 460, 545 A.2d 159 (1988). The facts here were such that plaintiff's comparative fault was properly submitted to the jury.

IV
We affirm on both the appeal and cross-appeal.
NOTES
[1] Although plaintiff was an employee, and not a guest of defendant, neither party argues that this difference should alter the result here. We agree. Morris v. Krauszer's Food Stores, Inc., 300 N.J.Super. 529, 535, 693 A.2d 510 (App.Div.1997)(employee is a business invitee of the defendant employer "and thereby falls within the class of persons to whom the owner or lessor of the premises owes a duty").
[2] The Tose Court noted that its references to contributory or comparative negligence were essentially interchangeable in this context. Tose, supra, 819 F.Supp. at 1314 n. 4. The same is true here.