812 So.2d 829 (2002)
Elisa M. THOMPSON
v.
WINN-DIXIE LOUISIANA, INC., State Protection Agency, Samuel Oschin, as Trustee of the Samuel Oschin 1987 Revocable Trust, as Trustee of the Michael Oschin Trust, and as Trustee of the Barbara Oschin Primicerio Trust and William K. Glikbarg, et al.
No. 2001-CA-1259.
Court of Appeal of Louisiana, Fourth Circuit.
March 6, 2002.
Writ Denied May 31, 2002.
*830 Timothy P. Hurley, Josee R. Cot, Maginnis & Hurley, APLC, New Orleans, LA, for Plaintiff/Appellant.
Robert E. Peyton, Elizabeth S. Cordes, Christovich & Kearney, New Orleans, LA, for Defendant/Appellee.
(Court composed of Chief Judge WILLIAM H. BYRNES III, Judge JAMES F. McKAY III, and Judge DAVID S. GORBATY).
WILLIAM H. BYRNES III, Chief Judge.
Plaintiff-appellant, Elisa Thompson, appeals the summary judgment dismissal of her claim for personal injury damages against the defendant-appellee, Winn-Dixie. We affirm.
We review summary judgments de novo according to the standards set forth in Shelton v. Standard/700 Associates, XXXX-XXXX (La.10/16/01), 798 So.2d 60, 64-65.
The plaintiff, Elisa Thompson, alleges that she was abducted at gunpoint just prior to exiting her car to enter the Winn-Dixie grocery store located at 500 N. Carrollton Avenue.[1] We will assume for purposes of argument that it was plaintiff's intent to exit the car and enter the store after she eventually finished her personal cell phone conversation, in spite of the fact that we have only her self-serving statement to support that conclusion. She was subsequently raped, shot and left for dead. She was parked in the public street on Toulouse near an entranceway. Plaintiff notes that Winn-Dixie assumed responsibility to plant and retain shrubbery on either side of the entranceway. According to her theory of the case, Winn-Dixie "invited customers to park on Toulouse Street, the adjacent public street," and assumed a duty to provide security. Plaintiff admits that she was on public property at the time she was abducted. It is undisputed that plaintiff chose not to park in the lighted, fenced-in parking lot Winn-Dixie provided to its customers immediately abutting its store.
*831 The plaintiff testified by deposition that it was "not really dark" when she was abducted at approximately 8:00 p.m. on Saturday August 9, 1997. Her vehicle was parked such that the driver's seat in which the plaintiff was sitting was on the Toulouse Street side and the passenger seat was on the sidewalk side. She remained in her car after parking in order to conclude a cell phone conversation with a friend. She looked up and beheld a 14-year old assailant (later identified as James Rhea) standing in the street pointing a gun at her through the driver's window of her car. He opened the driver's door which was unlocked, grabbed her phone and told her to move to the passenger side of the car. He then got into the driver's seat and drove away in the car. Plaintiff testified that for several hours thereafter, James Rhea and his cousin Alan Rhea committed various criminal acts at various locations throughout Orleans and Jefferson Parishes.
Whether a duty is owed is a question of law. Gardner v. Griffin, 97-0379, p. 7 (La.App. 1 Cir.4/8/98), 712 So.2d 583, 588. Generally, there is no duty to protect others from the criminal activities of third persons. Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364, 1371 (La. 1984).
Plaintiff notes that Winn-Dixie's lease documents assume responsibility for all activity arising from Winn-Dixie's business on and about the premises and elsewhere. The lease language referred to by the plaintiff is found in paragraph 9 of the lease entitled, "Indemnification":
The tenant shall indemnify and hold harmless the Landlord from and against any and all claims arising from the Tenant's use of the premises, or form [from] the conduct of the Tenant's business or from any activity, work or things done, permitted or suffered by the tenant in or about the premises or elsewhere....
This sweeping indemnification provision quoted in pertinent part above was not an expression by Winn-Dixie of any intent to provide any level of security vis a vis third parties. Nor is it the expression by Winn-Dixie of an intent to expand its responsibilities to third persons beyond what is already required by law. It is simply an agreement by Winn-Dixie to indemnify and hold its landlord harmless from claims. This clause only comes into play should someone attempt to press a claim against the lessor for some Winn-Dixie activity. In other words, it is an attempt by the parties to the lease to adjust the law between themselves pursuant to their right to contract.
In Coins v. Wal-Mart Stores, Inc., XXXX-XXXX, p. 6 (La.11/28/01), 800 So.2d 783, 788, the Supreme Court in a case involving Wal-Mart described the standard by which we must review Winn-Dixie's summary judgment motion:
Therefore, to carry its burden on summary judgment, Wal-Mart [read "Winn-Dixie"] must show that there is an absence of factual support for any of the elements of the negligence cause of action. This negligence case is resolved by employing a duty-risk analysis, which involves five elements: (1) that the defendant's conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (2) that the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) that the defendant had a duty to conform his conduct to a specific standard (the duty element); (4) that the defendant's conduct was the legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) that the plaintiff suffered actual damages (the damages element). Perkins v. Entergy *832 Corp., 00-1372, p. 7 (La.3/23/01), 782 So.2d 606, 611.
Posecai v. Wal-Mart Stores, Inc., 99-1222 (La.11/30/99), 752 So.2d 762
The law must place some reasonable limit to the scope of protection envisioned by defendant's conduct. Hebert v. Taco Bell Corp., 92-0606 (La.App. 4 Cir. 1/28/93), 613 So.2d 729. Moreover, we agree with our learned brethren of the First Circuit that "we are not persuaded that the analysis applied in cases involving injury due to a defect in the adjoining or nearby premises warrants imposition of a duty herein." Bezet v. Original Library Joe's Inc., 98-1467, 98-1468 (La.App. 1 Cir. 6/25/99), 747 So.2d 77, 86. Injuries arising from premises defects are not analogous to injuries arising from random criminal acts. When a premises defect is corrected the potential for injury caused by that defect is eliminated. But even the presence of several security guards in the exact location where plaintiff was carjacked probably would have done nothing more than cause the malefactor to perpetrate the same crime on a different victim at a different location, thereby failing to advance any societal interest in the problem. It is simply not reasonable to hold a business responsible for the safety of persons who are potential patrons or immediate former patrons, where injury is caused by the intentional acts of others inflicted off the business premises. Id.; Hebert, supra, 613 So.2d at 733. Duty is a question of law. Roberts v. Benoit, 605 So.2d 1032, 1043 (La.1991). The scope of the duty is ultimately a question of policy as to whether the particular risk falls within the scope of the duty. Id., 605 So.2d at 1044. The sovereign is responsible for the safety of the public streets. There is no suggestion that Winn-Dixie's conduct in the area exceeded normal business activities. There is no suggestion that Winn-Dixie undertook any activities that could be described as extra hazardous or dangerous. In short, Winn-Dixie did nothing that would warrant this Court from deviating from the normal policy that the sovereign is responsible for the safety and policing of the public streets. In fact, it would be bad policy. The more the courts try to off-load the sovereign's responsibility for random third-party criminal acts onto neighborhood businesses, the harder it will be to induce providers of basic services such as grocery stores and pharmacies to locate in high crime areas; and those that do so must then compensate by charging more to offset the added insurance and security expenses. This contributes to the well known fact that residents in poverty areas, which are normally also the areas of highest crime, tend to pay a premium for essential services in spite of the fact that they are the least able to pay. Such residents are also the least mobile because of the economic limitations on their transportation options, resulting in a diminished capacity to take advantage of lower cost options located outside of their immediate neighborhoods. As the Supreme court said in Posecai, 752 So.2d at 768:
The economic and social impact of requiring businesses to provide security on their premises is an important factor. Security is a significant monetary expense for any business and further increases the cost of doing business in high crime areas that are already economically depressed. Moreover, businesses are generally not responsible for the endemic crime that plagues our communities, a societal problem that even our law enforcement and other government agencies have been unable to solve. At the same time, business owners are in the best position to appreciate the crime risks that are posed on their premises and to take reasonable precautions *833 to counteract those risks. [Emphasis added.]
Additionally, there is the problem for businesses and their insurers to determine the extent of the geographic boundaries of their liability under plaintiff's theory of off premises liability. Undoubtedly, insurers would err on the side of caution in calculating premiums for off-premises liability. When society as a whole has not managed to solve the problem of crime in the streets with all of the vast resources of the sovereign, it seems unreasonable to expect Winn-Dixie to do so. A business also faces increased liability for activities it might undertake off of its premises. Does society really want private citizens and entities undertaking law enforcement activities on the public streets? That strikes this court as being akin to vigilante justice and harks back to feudal societies where the local lord was expected to provide some measure of security. It is generally felt that modern society has moved beyond those concepts.
Plaintiff acknowledges in her brief that the Winn-Dixie security guard only monitored inventory and employees at the back door. Plaintiff can cite no case that would compel Winn Dixie to hire a guard. Plaintiff can cite no case that would prevent Winn-Dixie from assigning any guard it hired such a limited scope of responsibility:
We reject the court of appeals' finding that Sam's assumed a duty to protect its patrons from crime when it hired a security officer to guard its cash office. This finding relies on an erroneous interpretation of our decision in Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364 (La.1984). Pizza Hut does not stand for the proposition that a business assumes the duty to protect its customers from the criminal acts of third persons merely because it undertakes security measures.
Posecai v. Wal-Mart Stores, Inc., 99-1222 (La.11/30/99), 752 So.2d 762, 769, fn. 7.
It would only be in those instances in which such a guard was negligent in the exercise of his assigned duties and that negligence led to injury that there would be any basis to even begin to examine Winn-Dixie's liability. A careful reading of Pizza Hut shows that liability arose when the security guard hired by the business negligently precipitated a shoot-out with an armed assailant that resulted in injury to a patron on the premises. In other words, liability in Pizza Hut arose not because of the failure of the security guard to prevent a crime, but because the actions of the security guard actually increased the risk of harm to the patron and contributed in a positive rather than in a passive way to the injuries sustained by the patron. We assume from the language quoted above from Posecai that the Supreme Court recognizes that it would be bad policy to hold that a business that hires a security guard that it had no duty to hire and which guard does nothing to increase the risk to the injured patron beyond what would have existed in the absence of the guard, has somehow expanded its scope of liability. Even a security guard asleep on the job provides some additional measure of deterrence to crime. A security guard asleep on the job does not increase the risk of injury to patrons beyond what would have existed had there been no guard at all. It is only where the negligent performance of a security guard's duties actually increases the risk of harm to the patron as occurred under the facts of Pizza Hut that the business owner should be made a potential target of litigation. If there is no public policy requiring a business to provide a security guard under the particular facts of a case, there can be no public policy imposing liability on the business owner under the *834 same facts where the business's security guard fails to prevent a criminal act. It is only in those instances in which the negligent actions of the guard actually increase the risk of harm to the patron and such increased risk is a contributing factor in the patron's ensuing injury that this Court could envision a policy imposing liability on the business that employed that guard.
Assuming arguendo that all of the facts are exactly as the plaintiff alleges them to be, we find as a matter of law that Winn-Dixie owed no duty to the plaintiff to provide security under the facts of this case.
Plaintiff relies heavily on Banks v. Hyatt Corp., 722 F.2d 214 (5 Cir.1984), but we find Banks to be unpersuasive for a number of reasons: (1) In Banks the crime perpetrated on plaintiff occurred on property owned by the defendant hotel a few feet from the entrance to the hotel where the plaintiff was a registered guest; (2) The Banks opinion places great emphasis on the duty owed by innkeepers, a duty exceeding that of ordinary businesses such as Wal-Mart; and (3) This Court is more influenced by the reasoning of our own Supreme Court in Posecai, supra, which is not only entitled to more deference by this Court, but which also represents a much more recent expression of the current state of Louisiana public policy in this area of the law than Banks or even the opinion of this Court in Peterson v. Doe, 94-1013 (La.App. 4 Cir. 12/5/94), 647 So.2d 1288.
For the foregoing reasons, the judgment of the trial court is affirmed at plaintiff's cost.
AFFIRMED.
NOTES
[1] Plaintiff also sued other defendants who are not parties to this appeal.