# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 09-918

**JEFFERY ALEXANDER ARKELL**

**VERSUS**

**LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT, ET AL.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20075546
HONORABLE KRISTIAN D. EARLES, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## ELIZABETH A. PICKETT
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, Marc T. Amy, and Elizabeth A. Pickett, Judges.

**AFFIRMED.**

Robert L. Ellender
Voorhies & Labbe
P. O. Box 3527
Lafayette, LA 70502-3527
Counsel for Defendant/Appellee:
        Colony Insurance Company

Richard J. Petre  Jr.
Onebane Law Firm
P. O. Drawer 3507
Lafayette, La 70502-3507
Counsel for Defendant/Appellee:
        Cloutier Monceaux Entertainment LLC

D. Patrick Daniel, Jr.
Attorney at Law
P. O. Drawer 51709
Lafayette, LA 70505-1709
Counsel for Plaintiff/Appellant:
     Jeffery Alexander Arkell

**PICKETT, J.**

The plaintiff, Jeffery A. Arkell, appeals a judgment of the trial court granting motions for summary judgment filed by the defendants, Cloutier Monceaux Entertainment, LLC (d/b/a Marley's Sports Bar, hereinafter, Marley's) and its insurer, Colony Insurance Company, and dismissing the plaintiff's suit against them. We affirm the judgment of the trial court.

## FACTS

The facts, which are undisputed, are taken from the deposition of the plaintiff, Jeffery Arkell. At approximately 8:30 p.m. on Sunday, November 14, 2006, Jeffery and two of his friends, Jeremy Doucet and Troy Rivers, went to Marley's which is located at 407 Jefferson Street in Lafayette. Jeremy, who had driven, parked his truck in the city-owned parking lot on the corner of Jefferson and Garfield Streets. The trio entered Marley's through the front door on Jefferson Street. Marley's also has a back door through which the parking lot is accessible. Upon entering the bar, the trio spotted a mutual acquaintance, Steven Murphy, who was sitting at the bar with a date. The three walked over, said hello, got some beer and began to play pool. It should be noted that Marley's closes at midnight on Sunday nights.

Somewhere around 11:40-11:45 p.m., six men entered Marley's through the rear door. According to Jeffery, " they weren't dressed well . . . they looked sort of out of place." The group stood around near the rear door. Jeffery stated that at or near midnight, as Steven and his date were making their way toward the back door past the six men,

> they grabbed her butt. . . . [Steven] told them not to - that they shouldn't do that, and from what I've heard from Steven, because I didn't actually hear what they told him, they said: "Do you want to take it outside?" And basically, they were looking for some reason to start something. .

1

. . [Steven] said he didn't want any part, they walked out, and from that point on others [other patrons] followed suit out as they - as they walked outside to the parking lot.

. . . .

And so as me and Jeremy were leaving to get in the car, we noticed them [Steven and several other patrons] arguing back and forth with the six [. . .] guys. We just walked to our car, didn't really know what the initial - why they were continuing to argue, but we really didn't have any part in that. So as we were going to leave, you know, that's - that was happening right outside [in the far side of the parking lot].

Although he had arrived with Jeffery and Jeremy, Troy Rives had left about five minutes before, stating that he had a ride home with a lady-friend he met at the bar.

Jeffery and Jeremy got into Jeremy's truck and were preparing to leave when someone ran up to the truck and told Jeremy that "they hit Troy in the head with a bottle." Jeffery stated that at that point, "From then Jeremy jumped out of the car and when I looked up, they were - the six guys were - one was holding him up and one was in front of him with a baseball bat, hitting him in the leg."

In his deposition, Jeffery stated the following:

So from this point, this sort of - I got out of the car mainly to go and basically pull him away or stop it. It was sort of fight or flight mode, you know. And so when I went over there to stop them, they let him go and they hit me in the back of the head with a bat.

. . . .

From this point, I stood up. I'm not sure if I was knocked out for a period of time or what. I just remember standing up. Everybody was gone. And then I was weak, so I sat back down. And then Jeremy came over, and that's whenever they witnesses the stab wounds and my arm was broken and my head was bleeding.

From that point, they tied my head up and my arm with this jacket. And when the ambulance arrived, they took off my shirt and everything and they noticed that I had a stab wound in my stomach also.

2

Jeffery stated that all of the preceding happened about 60 feet from Jeremy's truck. A sketch he drew shows the attack happened in the middle of Garfield Street near its intersection with Jefferson Street.

On October 15, 2007, Jeffery filed suit against the Lafayette City-Parish Consolidated Government and Marley's and its insurer, Colony Insurance Company (Colony). In his suit the plaintiff alleged the following in respect to the fault of Marley's:

> Marley's was negligent and is responsible in the following non-exclusive particulars:
>
> a. Failing to provide adequate security;
> b. Failing to place into effect a policy providing adequate security;
> g.[sic] Failing to honor its duty to provide a safe environment for its patrons;
> c. Allowing a dangerous and unsafe environment to exist for its patrons after being provided actual or constructive notice of this condition; and
> d. Any and all other acts of negligence that will be proven at the trial on the merits in this matter.

In response, Marley's and Colony filed the motion for summary judgment which is the subject of this appeal.

## LAW AND DISCUSSION

In this case, the facts are not in dispute. What is before us are questions of law: did the defendant owed a duty to the plaintiff and if it did, was that duty breeched? In *Olson v. Rapides Parish Sheriff*, 07-57, pp. 2-3 (La.App. 3 Cir. 5/2/07), 957 So.2d 282, 284, a panel of this court discussed the applicable law:

> The law applicable to summary judgments and to the appellate review thereof is well settled:
>
>> The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by law; the procedure is favored and must be construed to accomplish these ends. La. C.C.P. art. 966(A)(2); *Yarbrough v.*

3

*Federal Land Bank of Jackson*, 31,815 (La.App.2d Cir. 03/31/99), 731 So.2d 482. The motion should be granted only if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B); *Leckie v. Auger Timber Co.*, 30,103 (La.App.2d Cir. 01/21/98), 707 So.2d 459. The burden of proof remains with the mover. However, if the party moving for summary judgment will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, then that party need not negate all essential elements of the adverse party's claim, action, or defense but may simply point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense; thereafter, if the adverse party fails to produce factual support sufficient to establish that it will be able to satisfy the evidentiary burden of proof at trial, there is no genuine issue of material fact. *See*, La. C.C.P. art. 966(C)(2). When a motion is made and supported, as required by La. C.C.P. art. 966, an adverse party may not rest on the mere allegations or denials of his pleadings, but his response must set forth specific facts showing a genuine issue for trial. Otherwise, summary judgment, if appropriate, shall be rendered against him. La. C.C.P. art. 967.

Appellate courts review summary judgments de novo under the same criteria that govern a district court's consideration of whether summary judgment is appropriate. *Kennedy v. Holder*, 33,346 (La.App. 2d Cir. 05/10/00), 760 So.2d 587.

*Semien v. EADS Aeroframe Servs., LLC*, 04-760, pp. 1-2 (La.App. 3 Cir. 2/2/05), 893 So.2d 215, 216-17 (*quoting Sidwell v. Horseshoe Entm't Ltd. P'ship*, 35,718, pp. 2-4 (La.App. 2 Cir. 2/27/02), 811 So.2d 229, 230-31) (first emphasis added).

Our initial inquiry in this case is whether Marley's owed Jeffery a duty to protect him from attack in the middle of Garfield Street after closing hours. The law is clear, it did not. In *Pinsonneault v. Merchants & Farmers Bank & Trust Co.*, 01-2217, pp. 7-8 (La. 4/3/02), 816 So.2d 270, 276 (emphasis ours), our supreme court stated as follows:

4

The threshold question in any duty-risk analysis is whether the defendant owed a duty to the plaintiff. *Posecai* [v. Wal-Mart Stores, Inc., 99-1222 (La. 11/30/99), 752 So.2d 762], 99-1222 at 4, 752 So.2d at 766; *Meany v. Meany*, 94-0251, p. 6 (La.7/5/94), 639 So.2d 229, 233. Whether a duty is owed is a question of law. *Peterson v. Gibraltar Savings & Loan*, 98-1601, 98-1609, p. 7 (La.5/18/99), 733 So.2d 1198, 1204; *Faucheaux v. Terrebonne Consolidated Government.*, 615 So.2d 289, 292 (La.1993).

In Posecai, we held that while *business owners generally have no duty to protect others from the criminal acts of third persons*, "they do have a duty to implement reasonable measures to protect their patrons from criminal acts when those acts are foreseeable." *Posecai*, 99-1222 at 5, 752 So.2d at 766. Determining when a crime is foreseeable is a critical inquiry in the duty equation. *Id.* This inquiry is answered employing a balancing test. As we explained in *Posecai*:

> The *foreseeability* of the crime risk *on the defendant's property* and the gravity of the risk determine the existence and the extent of the defendant's duty. The greater the foreseeability and gravity of the harm, the greater the duty of care that will be imposed on the business. A very high degree of foreseeability is required to give rise to a duty to post security guards, but a lower degree of foreseeability may support a duty to implement lesser security measures such as using surveillance cameras, installing improved lighting or fencing, or trimming shrubbery. The plaintiff has the burden of establishing the duty the defendant owed under the circumstances.
>
> The foreseeability and gravity of the harm are to be determined by the facts and circumstances of the case. The most important factor to be considered is the existence, frequency and similarity of prior incidents of crime on the premises, but the location, nature and condition of the property should also be taken into account. It is highly unlikely that a crime risk will be sufficiently foreseeable for the imposition of a duty to provide security guards if there have not been previous instances of crime *on the business' premises*.

*Posecai*, 99-1222 at 8-9, 752 So.2d at 768.

First, we note that there was *no* contact or communication between Jeffery,

Jeremy and their attackers while all were in Marley's. Steven, who had contact with

the group, walked away and exited Marley's rather than escalate the situation. Accordingly, there was no foreseeability.

Next, we note that both Jeremy and Jeffery left Marley's and went to the city-owned parking lot where Jeremy's truck was parked. They were in the truck, in a position of safety, when "someone" ran up to the truck and told Jeremy that "they hit Troy in the head with a bottle." Jeremy, then, left his position of safety to check on Troy. He was attacked in the middle of Garfield Street, a public thoroughfare. Upon observing the attack on Jeremy, Jeffery also left his position of safety to go to the aid of his friend. This is when he was attacked, also in the middle of Garfield Street.

In *Thompson v. Winn-Dixie Louisiana Inc.*, 01-1259, pp. 4-6 (La.App. 4 Cir. 3/6/02), 812 So.2d 829, 832-33, *writ denied*, 02-0971 (La. 5/21/02), 817 So.2d 104 (citations omitted)(italic emphasis ours) our colleagues of the fourth circuit, with whom we agree, stated:

> It is simply not reasonable to hold a business responsible for the safety of persons who are potential patrons or immediate former patrons, where injury is caused by the intentional acts of others inflicted off the business premises. Duty is a question of law. The scope of the duty is ultimately a question of policy as to whether the particular risk falls within the scope of the duty. *The sovereign is responsible for the safety of the public streets.*
>
> . . . .
>
> As the Supreme court said in *Posecai*, 752 So.2d at 768:
>
>> The economic and social impact of requiring businesses to provide security **on their premises** is an important factor. Security is a significant monetary expense for any business and further increases the cost of doing business in high crime areas that are already economically depressed. Moreover, businesses are generally not responsible for the endemic crime that plagues our communities, a societal problem that even our law enforcement and other government agencies have been unable to solve. At the same time, business owners are in the best position to

6

appreciate the crime risks that are posed **on their premises** and to take reasonable precautions to counteract those risks. [Emphasis added.]

Additionally, there is the problem for businesses and their insurers to determine the extent of the geographic boundaries of their liability under plaintiff's theory of off premises liability. Undoubtedly, insurers would err on the side of caution in calculating premiums for off-premises liability. When society as a whole has not managed to solve the problem of crime in the streets with all of the vast resources of the sovereign, it seems unreasonable to expect [Marley's] to do so. A business also faces increased liability for activities it might undertake off of its premises. Does society really want private citizens and entities undertaking law enforcement activities on the public streets? That strikes this court as being akin to vigilante justice and harks back to feudal societies where the local lord was expected to provide some measure of security. It is generally felt that modern society has moved beyond those concepts.

Since the attack on the plaintiff consisted of criminal acts of third persons and took place on a public street a significant distance from Marley's premises we find that the attack did not fall within Marley's scope of duty to protect its patrons.

As to the summary judgment granted in favor of Colony, it is well settled that if there is no liability on the part of insured, there can be no liability on the part of the insurer. *Cavalier v. Rivere's Trucking, Inc.*, 03-2197 (La.App. 1 Cir. 9/17/04), 897 So.2d 38. Furthermore, the insurance policy contained a clause which excluded liability for any injury "arising out of or resulting from (1) Assault and Battery committed by any person."

Accordingly, for the reasons stated, the judgment of the trial court, granting summary judgments in favor of defendants, Cloutier Monceaux Entertainment, LLC (d/b/a Marley's Sports Bar) and its insurer, Colony Insurance Company, and dismissing the plaintiff's suit against them is affirmed. Costs of this appeal are assessed against the plaintiff/appellant, Jeffery A. Arkell.

**AFFIRMED.**

7