| KIMI SEYMOUR, | * | NO. 2020-CA-0297 |

**KIMI SEYMOUR, INDIVIDUALLY AND ON BEHALF OF HER DECEASED DAUGHTER, BRITTANY SEYMOUR**     *     **NO. 2020-CA-0297**

    *     **COURT OF APPEAL**

**VERSUS**     *     **FOURTH CIRCUIT**

    *     **STATE OF LOUISIANA**

**HOUSE OF BLUES NEW ORLEANS RESTAURANT CORPORATION D/B/A THE HOUSE OF BLUES NEW ORLEANS, AND/OR HOUSE OF BLUES PARTNERSHIP MANAGEMENT CORPORATION D/B/A THE HOUSE OF BLUES NEW ORLEANS, AND/OR HOUSE OF BLUES MUSIC FORWARD FOUNDATION D/B/A THE HOUSE OF BLUES NEW ORLEANS, AND/OR LIVE NATION CORPORATION D/B/A THE HOUSE OF BLUES NEW ORLEANS, AND/OR LIVE NATION ENTERTAINMENT, INC. D/B/A THE HOUSE OF BLUES NEW ORLEANS**     \* \* \* \* \* \* \*

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2018-04429, DIVISION "N-8"
Honorable Ethel Simms Julien, Judge
\* \* \* \* \* \*
**Judge Rosemary Ledet**
\* \* \* \* \* \*

(Court composed of Judge Edwin A. Lombard, Judge Rosemary Ledet, Judge Tiffany G. Chase)

John M. Robin
Zachary D. Rhodes
Catherine M. Robin
600 Covington Center
Covington, LA 70433

      COUNSEL FOR PLAINTIFF/APPELLANT

Richard G. Duplantier, Jr.
GALLOWAY, JOHNSON, TOMPKINS, BURR & SMITH
One Shell Square, Suite 4040
701 Poydras Street,
New Orleans, LA 70139

COUNSEL FOR DEFENDANTS/APPELLEES

**AFFIRMED**
**November 25, 2020**

This is an off-premises liability suit. The plaintiffs—Kimi Seymour and Troy Watts, individually and on behalf of their deceased daughter, Brittany Seymour (collectively "Plaintiffs")—filed this suit against The House of Blues New Orleans Restaurant Corp. (the "HOB"), asserting wrongful death and survival claims. From the trial court's March 5, 2020 judgment granting the HOB's summary judgment motion, Plaintiffs appeal. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The pertinent facts are undisputed. In the early morning hours of June 15, 2017, two groups of female patrons—a total of about seven or eight females—were involved in an alteration at the HOB's New Orleans location. When the altercation occurred, the two groups were walking down a staircase that exited the HOB's premises. Three security officers immediately intervened and separated the two groups. Dannisha Green was a member of one group; Brittany Seymour was a member of the other group. Unbeknownst to the HOB, Dannisha Green and

1

Brittany Seymour had an ongoing feud.[1] Immediately after separating the two groups, the security officers ejected Dannisha Green's group. The security officers, however, detained Brittany Seymour's group for an additional twenty minutes before ejecting that group. Neither the HOB's security officers nor its staff had any further involvement with either group.

After being ejected, Dannisha Green's group made several unsuccessful attempts to re-enter the HOB's premises by charging the stairs. Dannisha Green's group then walked down Decatur Street, stopping in the 300 block of Decatur Street. Once ejected, Brittany Seymour's group proceeded to interact with Dannisha Green's group more than one block away from the HOB's premises. The incident escalated, and Dannisha Green stabbed Brittany Seymour multiple times in the 300 block of Decatur Street. Shortly thereafter, police officers and an ambulance arrived. As a result of the injuries inflicted by Dannisha Green, Brittany Seymour died. This suit followed.

In their petition, Plaintiffs alleged that the HOB, as a business proprietor, had a general duty to exercise reasonable care to protect its patrons from harm at the hands of other patrons. Plaintiffs further alleged that, when the initial altercation between Dannisha Green and Brittany Seymour manifested itself, the HOB had a duty to call the police to attempt to prevent injury to the HOB's patrons, including Brittany Seymour. Plaintiffs still further alleged that the HOB

[1] According to Brittany Seymour's father's (Troy Watts') answer to interrogatories, the relationship between Dannisha Green and Brittany Seymour was "ongoing—plaintiffs['] aunt raised Dannisha Green's mother; they had been having an ongoing feud over family issues and a former relationship between Brittany Seymour and her ex-boyfriend who also was in a relationship with Dannisha Green, the father of her child."

2

breached its duty. According to Plaintiffs, had the HOB "exercised reasonable care in calling the police, the stabbing and subsequent murder of the decedent, Brittany Seymour, would not have occurred." Finally, Plaintiffs alleged that "[i]t was reasonably foreseeable that Dannisha Green would have been waiting outside the [HOB] for Brittany Seymour and would criminally assault and murder Brittany Seymour based on [Dannisha] Green's criminal behavior earlier that night at the [HOB] when she was evicted by the [HOB's] security personnel."

The HOB answered, generally denying liability. Following discovery, the HOB filed a motion for summary judgment. In its motion, the HOB made three arguments: (i) the HOB had no duty to protect against this criminal activity; (ii) the HOB had no duty to call the police; and (iii) the HOB exercised the requisite due care under the circumstances.

In opposition, Plaintiffs repeated the argument alleged in their petition, contending that the HOB, after it became aware of the initial altercation between Dannisha Green and Brittany Seymour that occurred on its premises, had a duty to call the police. In support of their position, Plaintiffs relied upon the HOB's internal memorandum, captioned "Jet Lounge Fight," that stated:

> At approximately 1:10 am 2 groups of females (about 7 or 8 total) were exiting the Parish during Jet Lounge and a fight broke out on the staircase around the middle landing. Buxton, Errol and Kenyon (Security) were there to break the 2 groups apart separating them. One group was pushed outside of the venue and the second was held at the landing to prevent further incident. After a bunch of yelling and threats and several attempts to make it back inside by charging the stairs. The first group walked away from our sidewalk towards the Decatur and Bienville corner by Industry. Security held (as in blocked) the second group until the first was beyond the corner and away from The Parish. The second group of 2 or 3 women were released afterwards and instructed by both myself and security to exit the venue and refrain from any further incident in front of our

establishment. They then proceeded to run down the street toward the original group. After some yelling, and screaming, apparently there was another fight between [I]ndustry and the fire station.[2] All HOB security remained at the Parish and did not incite, escalate or have further dealings with any individuals involved. (from footage. We held the group for approx[imately] 20 min[inute]s)

Several additional patrons exited the establishment and it was explained that no one would be allowed to re-enter, as I did not want another incident or for things to escalate. Police soon arrived on the scene near the fire station to break up the fight. A guest showed one of my guards a video of the stabbing down the street.

Several more police arrived shortly afterwards including an ambulance. The street was blocked and officers appeared to be questioning people. Crime tape was added as well. No HOB employees went to the scene. Musa (promotor) did go check it out, but I never spoke with him about it or asked any questions upon his return.

The crow[d] in the room thinned out and as soon as ticket taker was pulled, I had the guards make the room one way to lessen our possibility of having any visits from law enforcement.

NO COPS CAME TO THE VENUE.
NO COPS WERE CALLED TO THE VENUE.
NO COPS WERE SPOKEN TO BY MY PARISH CREW. AND WE DIDN'T SEE ANYTHING BUT THE FIGHT ON THE STAIRS.
THERE WAS NO WEAPON SEEN OR USED IN THE VENUE.

According to Plaintiffs, the memorandum established that the HOB, when it became aware of the initial altercation, had a duty to call the police and that it had substantial time to do so—at least twenty minutes. Following a hearing, the trial court granted the HOB's summary judgment motion. This appeal followed.

## DISCUSSION

On appeal, Plaintiffs assert that the trial court erred in granting summary judgment based on the HOB's position that it had no duty to protect Brittany

---

[2] Industry is apparently a local business, not a City street. The record reflects that HOB is located in the 200 block of Decatur Street, which is between Iberville and Bienville Streets; the firehouse is located in the 300 block, which is in between Bienville and Conti Streets.

Seymour or to call the police after an assault and battery occurred on its premises between Dannisha Green and Brittany Seymour. The HOB counters that it is not responsible for Dannisha Green's criminal acts for three reasons. First, the scope of protection (duty) afforded its patrons does not extend to protect from the unforeseeable criminal acts of third persons. Second, even if the HOB has a duty to protect against third persons' criminal actions on its premises, it does not have a duty to protect against third persons' criminal actions off its premises. Finally, the HOB exercised the reasonable care it owed to all of its patrons by separating the two groups and staggering their ejections from its premises. Thus, the HOB contends that it had no duty to call the police.

Applying well-settled procedural methodology and principles,[3] an appellate court reviews a trial court's judgment granting a motion for summary judgment *de novo*, "using the same criteria that the trial judge utilizes in his determination of

_____

[3] The summary judgment procedure is favored and shall be construed to "secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969." La. C.C.P. art. 966(A)(2). The governing statutory provision, La. C.C.P. art. 966, provides that a motion for summary judgment shall be granted if, "[a]fter an opportunity for adequate discovery," the "motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3).

"A court must grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law." *Bufkin v. Felipe's La., LLC*, 14-0288, p. 3 (La. 10/15/14), 171 So.3d 851, 854. "[T]he burden of proof remains with the movant. [But], if the moving party will not bear the burden of proof on the issue at trial and points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense, then the non-moving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial." *Id*. "This requires the [non-moving party] to make a positive showing of evidence creating a genuine issue as to an essential element of [its] claim; mere speculation is not sufficient." *Finch v. HRI Lodging, Inc.,* 49,497, p. 7 (La. App. 2 Cir. 11/19/14), 152 So.3d 1039, 1043. Whether a fact is material is a determination that must be made based on the applicable substantive law. *Roadrunner Transp. Sys. v. Brown*, 17-0040, p. 7 (La. App. 4 Cir. 5/10/17), 219 So.3d 1265, 1270; *Maddox v. Howard Hughes Corp.*, 19-0135, p. 5 (La. App. 4 Cir. 4/17/19), 268 So.3d 333, 337.

whether summary judgment is appropriate, in the light most favorable to the non-moving party." *Hooper v. Hero Lands Co.*, 15-0929, p. 12 (La. App. 4 Cir. 3/30/16), 216 So.3d 965, 973.

This is a negligence suit against a business proprietor arising out of an off-premises criminal act.[4] Louisiana courts addressing the liability of a business proprietor for off-premises criminal acts generally have held that there is no duty. *See Thompson v. Winn-Dixie Louisiana, Inc.*, 01-1259, pp. 4-5 (La. App. 4 Cir. 3/6/02), 812 So.2d 829, 832.[5] Likewise, Louisiana courts have held that "[g]enerally, there is no duty to protect others from the criminal activities of third persons." *Harris v. Pizza Hut of Louisiana, Inc.*, 455 So.2d 1364, 1371 (La. 1984). But, "when a duty to protect others against such criminal misconduct has been assumed, liability may be created by a negligent breach of that duty." *Id.*

Here, the HOB had security officers on duty.[6] The issue presented is whether the HOB's actions, taken through its security officers, were reasonable. *See Harris*,

---

[4] Louisiana courts have adopted a duty-risk analysis in determining whether to impose liability under the general negligence principles of La. C.C. art. 2315. For liability to attach under a duty-risk analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard of care (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of protection element); and (5) actual damages (the damage element). *Pinsonneault v. Merchants & Farmers Bank & Trust Co.*, 01-2217, p. 6 (La. 4/3/02), 816 So.2d 270, 275-76. "Failure to prove any of the elements of the duty-risk analysis results in a determination of no liability." *Finch*, 49,497, p. 8, 152 So.3d at 1044.

[5] *See also Hebert v. Taco Bell Corp.*, 613 So.2d 729, 733 (La. App. 4th Cir. 1993) (observing that "[i]t simply isn't reasonable to hold Taco Bell responsible for the safety of persons who may have been a patron at one time, where injury is caused by the intentional acts of others inflicted off the premises"); *Gary v. Allstate Ins. Co.*, 19-678, pp. 4-5 (La. App. 3 Cir. 3/4/20), 297 So.3d 116, 120 (observing that "[t]he shooting itself did not occur on the Post's premises at all. Rather, it occurred in the street in front of the building after the party had been shut down, further diminishing any claims Ms. Gary has as to any duty owed by the Post").

[6] This is not a case in which the duty to provide security is at issue. *See Posecai v. Wal-Mart Stores, Inc.*, 99-1222 (La. 11/30/99), 752 So.2d 762 (addressing the test to determine whether a

6

*supra.* To place this issue in context, we first note the following principles, which Plaintiffs rely upon, regarding a business proprietor's duty to its patrons:

> A business proprietor owes his patrons the duty to provide a reasonably safe place. The proprietor's general duty toward his patrons has been construed to encompass a number of more specific obligations. First, the proprietor must himself refrain from any conduct likely to cause injury to a guest. He must maintain his premises free from unreasonable risks of harm or warn patrons of known dangers thereon. Beyond these measures, the proprietor must exercise reasonable care to protect his guests from harm at the hands of an employee, another guest, or a third party.

> Reasonable care in the context of the threat of harm presented by the enumerated parties has been interpreted, in turn, to embrace certain sub-duties. First, should a disturbance or a likely disturbance manifest itself, the proprietor, if time allows, must attempt to prevent injury to his patrons by calling the police. Second, should the business owner or manager become aware of impending or possibly impending danger, he must warn his patrons of the potential danger.

> As to criminal acts performed by third parties, there is generally no duty to protect others from the criminal acts of those parties. In other words, the general duty of reasonable care does not extend to protecting patrons from the unanticipated criminal acts of third parties. Only when the proprietor has knowledge of, or can be imputed with knowledge of, the third party's intended conduct is the duty to protect invoked, triggering the sub-duties discussed above. This duty only arises under limited circumstances, when the criminal act in question was reasonably foreseeable to the owner of the business. Determining when a crime is foreseeable is therefore a critical inquiry.

*Fredericks v. Daiquiris & Creams of Mandeville, L.L.C.*, 04-0567, pp. 4-5 (La. App. 1 Cir. 3/24/05), 906 So.2d 636, 640 (internal citations omitted); *see also* *Taylor v. Stewart*, 95-1743, pp. 7-8 (La. App. 1 Cir. 4/4/96), 672 So.2d 302, 306-07.

A sub-duty to call the police only arises in two contexts: (i) a disturbance has manifested itself; or (ii) a likely—reasonably foreseeable—disturbance has

___
business has a duty to provide security).

7

manifested itself. *Fredericks,* 04-0567, p. 5, 906 So.2d at 640. As both contexts are pertinent here, we separately address each context. In so doing, we note that here the first context involves a disturbance that occurred on the HOB's premises; the second context involves an alleged likely—reasonably foreseeable—disturbance that manifested itself off the HOB's premises.

*A disturbance has manifested itself—here, on the HOB's premises*

The initial altercation between Dannisha Green and Brittany Seymour was a disturbance that manifested itself on the HOB's premises. The HOB's security officers immediately intervened and handled that disturbance by physically separating the two groups and staggering their ejections from the premises. In so doing, the HOB went beyond any duty it owed to call the police. *See Rodriguez v. New Orleans Public Service, Inc.,* 400 So.2d 884, 888 (La. 1981). (observing that "[t]he undisputed testimony establishes that motorman Yancy did more for Rodolfo Rodriguez than the law required of him when he intervened in the scuffle seconds after it started and separated Rodolfo and the weapon-wielding assailant"). Given the HOB's security officers promptly acted to prevent any physical altercation on its premises from escalating, the HOB met its duty regarding the initial disturbance on its premises.

*A likely—reasonably foreseeable—disturbance has manifested itself—here, off the HOB's premises*

Plaintiffs contend that the initial altercation coupled with Dannisha Green's group's attempt to re-enter the HOB after being ejected made it reasonably foreseeable that a likely disturbance would manifest itself off the HOB's premises. Stated otherwise, Plaintiffs' argument is that because the initial altercation on the

staircase was an assault and a battery that occurred on the HOB's premises and because the criminal actions of Dannisha Green were reasonably foreseeable, the HOB owed a duty to protect Brittany Seymour by calling the police.

Countering, the HOB contends that it had no knowledge that either Dannisha Green or Brittany Seymour intended to commit a crime. The HOB notes the lack of any allegation that anyone in either Dannisha Green's or Brittany Seymour's group entered the HOB brandishing weapons or otherwise making a scene before the initial altercation took place. To the contrary, the HOB emphasizes that all individuals, including both groups of females, were searched for weapons upon their entry into the HOB's premises. Moreover, the HOB stresses that its staff had no prior knowledge of the ongoing feud that existed between Dannisha Green and Brittany Seymour, which precipitated the criminal act off the HOB's premises. The HOB, thus, contends that its staff could not have known that the ongoing feud between the parties would provoke Dannisha Green into waiting one block down the street from the HOB's premises to attack Brittany Seymour.

Plaintiffs' suggestion that the incident on the HOB's premises gave rise to an ongoing duty on the part of the HOB to protect Brittany Seymour from the harm that occurred off the HOB's premises is unpersuasive. Here, there is no reason to depart from the general rule that a business proprietor is not liable for criminal acts of third persons that occur off its premises. As we observed in *Thompson,* "[i]t is simply not reasonable to hold a business responsible for the safety of persons who are potential patrons or immediate former patrons, where injury is caused by the intentional acts of others inflicted off the business premises." 01-1259, p. 4, 812 So.2d at 832.

9

The HOB had no duty to protect a former patron from an unforeseeable criminal act by a third party on the street a block away from its premises. The scenario involving these patrons, as the HOB points out, was unique on a number of levels. First, the initial altercation between the two groups of patrons took place as they were on a staircase exiting the HOB's premises. Second, the HOB's security officers immediately intervened and separated the two groups. Third, the HOB's security officers took an extra security measure by staggering the ejections, giving both groups the opportunity to safely walk away, call the police, or make any number of alternative choices. Fourth, ejecting the two groups from the premises served to protect all of the HOB's patrons. Fifth, neither Dannisha Green nor Brittany Seymour used her cell phone to call the police; nor did anyone involved ask the HOB's staff to call the police.[7] Finally, the parties engaged in another altercation, more than a block away from the HOB's premises and outside the presence of the HOB's security officers.

Given these six factors, we find, as the HOB contends, that this is not a case in which a reasonably foreseeable disturbance has manifested itself, triggering any continuing duty to protect former patrons off its premises. *See Albritton v. Woods*, 34,073, pp. 9-10 (La. App. 2 Cir. 9/28/01), 795 So.2d 1239, 1244 (observing that "the bar's duty did not extend to protecting Albritton from the consequences of his own decision to continue the encounter with Woods after the dispute appeared to be over"); *see also Broussard v. Gallo*, 12-0239 (La. App. 1 Cir. 11/2/12) (*unpub.*), 2012 WL 5385594, *5 (observing that "the Cadillac Café had no basis for anticipating that the violent attack on Broussard would occur. Since the criminal

---

[7] We note that there is no question that at least some of these individuals had cell phones with them. Indeed, a cell-phone video of the incident on the staircase was introduced by Plaintiffs in opposition to the summary judgment motion.

10

assault by Meadors was not reasonably foreseeable, no duty was imposed on the Cadillac Café to protect Broussard"). Accordingly, we find the HOB had no duty to call the police.

## DECREE

For the foregoing reasons, the trial court's judgment is affirmed.

**AFFIRMED**